# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JORDAN LEWANDOWSKI, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>TAL EDUCATION GROUP, and BANGXIN ZHANG,<br><br>        Defendants. | Case No:  2:23-cv-01769-MEF-JRA<br><br>Hon. Michael E. Farbiarz, U.S.D.J.<br><br><u>CLASS ACTION</u><br><br>ORAL ARGUMENT REQUESTED<br><br>MOTION DATE:  April 15, 2024 |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT ON BEHALF OF DEFENDANTS

Kevin H. Marino
John D. Tortorella
**MARINO, TORTORELLA
& BOYLE, P.C.**
437 Southern Boulevard
Chatham, NJ 07928-1488
Telephone: (973) 824-9300
Facsimile: (973) 824-8425
kmarino@khmarino.com
jtortorella@khmarino.com

*Attorneys for Defendants*

Michael B. Carlinsky[†]
Xiao Liu[†]
Jacob J. Waldman[†]
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, New York  10010-1601
Telephone:  (212) 849-7000
michaelcarlinsky@quinnemanuel.com
xiaoliu@quinnemanuel.com
jacobwaldman@quinnemanuel.com

---

[†] Application for admission *pro hac vice* forthcoming.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT ............................................................................................................2

I.    PLAINTIFFS FAIL TO PLEAD SCIENTER..................................................2

     A.    Plaintiffs Fail to Plead What the Double Reduction Prohibits and Therefore Any Intentional Breach.....................................................2

     B.    Plaintiffs Fail to Plead Meaningful Enforcement.................................7

     C.    Plaintiffs Fail to Plead Their FEs With Sufficient Particularity .........10

     D.    Plaintiffs Fail to Plead Knowing Misstatements About Courses........11

II.   PLAINTIFFS FAIL TO PLEAD FALSITY .................................................13

CONCLUSION.......................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

## <u>Cases</u>

*In re Aratana Therapeutics Inc. Sec. Litig.*,
 315 F. Supp. 3d 737 (S.D.N.Y. 2018) ..............................................................14

*California Public Employees' Ret. Sys. v. Chubb Corp.*,
 394 F.3d 126 (3d Cir. 2004) ......................................................................10, 11

*Chan v. New Oriental Educ. & Tech. Grp Inc.*,
 2019 WL 2865452 (D.N.J. July 3, 2019) ....................................................10, 11

*City of Sunrise Firefighters' Pens. Fund v. Oracle Corp.*,
 527 F. Supp. 3d 1151 (N.D. Cal. 2021)............................................................14

*City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*,
 70 F.4th 668 (3d Cir. 2023) ..............................................................................10

*In re DraftKings Inc. Sec. Litig.*,
 650 F. Supp. 3d 120 (S.D.N.Y. 2023) ..................................................................9

*Halman Aldubi Provident and Pens. Funds Ltd. v. Teva Pharma.
 Indus. Ltd.*,
 2022 WL 889158 (E.D. Pa. Mar. 25, 2022) ......................................................12

*Institutional Investor Group v. Avaya, Inc.*,
 564 F.3d 242 (3d Cir. 2009) ........................................................................11, 12

*Kauffman v. Nat. Health Trends Corp.*,
 2019 WL 7165921 (C.D. Cal. Dec. 20, 2019)......................................................9

*Roofer's Pens. Fund v. Papa*,
 2018 WL 3601229 (D.N.J. July 27, 2018) ........................................................12

*SEB Inv. Mgmt. AB v. Endo Int'l, PLC*,
 351 F. Supp. 3d 874 (E.D. Pa. 2018)................................................................12

*Weston v. DocuSign, Inc.*,
 669 F. Supp. 3d 849 (N.D. Cal. 2023)..............................................................14

*In re Xunlei Ltd. Sec. Litig.*,
 2019 WL 4276607 (S.D.N.Y. Sept. 10, 2019) ....................................................9

Defendants respectfully submit this Reply Memorandum of Law in support of Defendants' Motion to Dismiss the Amended Complaint ("AC").

## PRELIMINARY STATEMENT

The Opposition confirms Plaintiffs' pleading failures.

Plaintiffs' keystone claim is that the Double Reduction outlawed TAL's curriculum, but that TAL simply renamed its courses and went on teaching the exact same thing.  The AC pleads *none* of this.  It fails to plead with particularity what the Double Reduction actually prohibits—they do not even supply its text—and so cannot plead with particularity that it was breached, much less intentionally or knowingly.  And the handful of TAL syllabi (only one of which is allegedly attached to the AC) show, *at most*, that TAL's new courses are not 100% different from their prior courses—a degree of overlap that Plaintiffs do not plead is prohibited by the Double Reduction.  Plaintiffs' scattered allegations, and the Opposition's frequent speculation, do not approach the particularity needed to plead Plaintiffs' assertions of intentional, widespread misconduct.

Plaintiffs' allegations are also self-defeating.  They allege TAL ignored a regulatory upheaval, accompanied by robust enforcement, and considered a "priority" of the Chinese government, which misconduct was allegedly exposed by the widely-read *Cailian* Report.  Yet Plaintiffs allege no action by the Chinese government.  These allegations, along the failure to offer any authoritative view of

what the Double Reduction considers to be "academic," or what it prohibits, calls for the inference that the sole authority in charge of interpreting and enforcing the ever-evolving Double Reduction disagrees with Plaintiffs' view of Chinese law.

The action should be dismissed, with prejudice.

## ARGUMENT

### I.    PLAINTIFFS FAIL TO PLEAD SCIENTER

#### A.    Plaintiffs Fail to Plead What the Double Reduction Prohibits and Therefore Any Intentional Breach

The Motion makes clear that Plaintiffs fail to plead with particularity what is prohibited by the Double Reduction, and so have not pleaded that it was breached, much less knowingly or intentionally.  *See* Mot. 10-15; *see also id.* at 15-16 (failure to plead Defendants' view of the Double Reduction differed from their statements about compliance).  Plaintiffs do not even allege the text of the Double Reduction, relying instead on the *Cailian* Report, the Identification Guidelines ("IG"), and a pair of infractions that do not come close to pleading a widespread, systematic breach.  *See id.* at 13-14, 17-19.  Nor do Plaintiffs contest that their FE witnesses offer no facts as to what any Defendant actually thought or knew.  *See id.* at 19-20.

The Opposition argues that the IG demonstrate a breach.  Opp. 20-22.  But, as the Motion makes clear, the IG comprises a few sentences of broad guidance—they are not law.  Mot. 13-14; *see also* Opp. 20 (describing the IG as "set[ting] out four factors to consider in considering whether an offering is academic").

2

Plaintiffs claim the IG are nonetheless authoritative because "it is common for laws and regulations to define prohibited conduct by listing factors tending to show illegality." Opp. 23. Plaintiffs offer no examples of any such laws, much less any reason to believe this unsupported claim applies to Chinese law. Further, Plaintiffs use, as an example, SEC guidance for issuers of "digital assets" as to whether their asset might be deemed a "security" under the securities laws. The SEC makes clear it is offering *advice* to "*assist* those engaging in the offer, sale, or distribution of a digital asset, and their counsel, *as they consider these issues*."[1] The IG, as alleged, perform the same function: advising tutoring companies how the Chinese government might view certain curricula. But Plaintiffs nowhere allege that the Chinese government concurs with Plaintiffs' self-serving application of the IG.

Regardless, even if Plaintiffs could plead a "breach" of the Double Reduction by pleading a "breach" of the IG, Plaintiffs' reliance on TAL's syllabi and marketing materials fails to plead such a breach. As a preliminary point, Plaintiffs chastise Defendants for supposedly arguing that "syllabi could not have been for math classes because it does not set out specific math problems," which Plaintiffs claim "misunderstands what a syllabus is," since it sets out the "concepts taught in a class." Opp. 13. In other words, Plaintiffs concede a syllabus does not describe the specific

---

[1] *See* https://www.sec.gov/corpfin/framework-investment-contract-analysis-digital-assets#_edn1 (emphasis added); Opp. 23.

3

topics or issues covered in a class, nor the pedagogical approach.  Yet Plaintiffs also claim that just a handful of TAL's syllabi—only one of which is even attached (allegedly) to the AC—are sufficient to plead that TAL merely renamed its existing courses and completely ignored the Double Reduction.  In fact, and at best, the alleged syllabi might suggest scattered overlap of certain concepts between TAL's current curricula and the MOE's academic goals, or TAL's pre-Double Reduction curricula—such as a problem about trees and a few poems.  But Plaintiffs fail to plead these topics, or some overlap with academic curricula, are "prohibited" by the IG, much less by the Double Reduction.  *See* Opp. 13.

The foregoing disposes of most of Plaintiffs' reiterated allegations.  Plaintiffs assert that certain "lectures" on the syllabi were "devoted purely to arithmetic, at least two taught geometry, and at least three taught basic data and analysis."  Opp. 9.  But Plaintiffs concede that the single-sentence (or less) description of topics on a syllabus cannot detail what specific topics and concepts are actually taught, or how they are taught, and so plead little more than overlap with prior curricula, which Plaintiffs again fail to plead is prohibited.  *See* Opp. 10 (claiming the *Creative Thinking* syllabi "closely match" "Think Academy" classes, but showing at best some limited overlap); *see also* Mot. 28-29.

Plaintiffs claim the Amended Complaint "explains how each of the syllabi's lectures matches one of [the MOE's] elements," citing Paragraph 108.  Opp. 10.

4

That vastly overclaims what Plaintiffs have alleged.  For instance, Plaintiffs quote the MOE guidelines as calling for students to "develop a sense of quantity, spatial concepts, and basic geometric intuition," AC ¶ 108(d), and claim without further explanation that this is "[c]overed in **Summer Lecture Session 1; Autumn Lecture Session 9**." *Id.*  The two referenced items from Exhibit A are the following:

| Session | Topic | Learning focus | Core knowledge gained | Core competency |
|---|---|---|---|---|
| Summer Lecture Session 1 | Little architect | Clever calculation of perimeters | Cleverly solve the perimeter problem, cultivate graphic cognition and logical analysis ability | Graphic cognition |

| Session | Topic | Learning focus | Core knowledge gained | Core competency |
|---|---|---|---|---|
| Autumn Session 9 | Colorful lights | preliminary Graphical counting | Preliminary graphic counting, triangle, square, rectangle, complex classification enumeration | Logical Analysis |

The "Topics," "Learning Focus," and "Core Competency" all differ from the MOE guidance, and "Core Knowledge Gained," at most, suggests some limited overlap.

Plaintiffs also insist that TAL can satisfy "different extracurricular interests" only by offering courses on, for example, "dinosaurs and micro-organisms" or "dance, piano, or ping-pong," Opp. 10-11, and that it is the "rare child who has a passionate interest in . . . arithmetic." *Id.* at 11.  But this is speculation, arising from bizarre and unsupported stereotyping that would baffle generations of math-letes, and further assumes a definition of "academic" that appears nowhere in the IG.

Notably, Plaintiffs also argue syllabi are ***not*** "too brief to infer their contents," using Exhibit A to claim Autumn Lecture Session 1 is "plainly about arithmetic," Opp. 11, and that "lecture" precludes any other teaching approach.  The item:

5

| Session | Topic | Learning focus | Core knowledge gained | Core competency |
|---|---|---|---|---|
| Autumn Lecture Session 1 | Chance to multiply | Clever Multiplication calculation | Solving multiplication calculation cleverly, rounding up technique, special number calculation, Distributive law, extraction of common divisors | Data processing |

indicates its subject matter differs from plain math, focusing on "clever" ways to address concepts and a goal of better understanding and processing data—a widely applicable skill that goes well beyond mere arithmetic. Plaintiffs again fail to plead the IG or Double Reduction prohibits these topics and concepts.

Plaintiffs' remaining allegations fail to show non-conformance with the IG or Double Reduction. Plaintiffs claim that unspecified "promotional materials" "boasted that questions it had posed to students in its classes were very similar to questions that appeared in school tests." AC ¶ 97; *see also* Opp. 21. Plaintiffs claim this means "TAL's classes are targeting curricular material," Opp. 21 n.2, but that is also speculation, particularly in light of their failure to identify the test, its subject matter, the number of questions, the "classes" at issue, or even when the brochure was published. And this single example does not support the grand theory, much less with particularity, that TAL did nothing more than teach the same courses under a new name. Plaintiffs also claim the MOE "does not regulate at the absurd level of granularity TAL posits," Opp. 26, which means only that Plaintiffs *agree* they fail to plead with particularity what the Double Reduction actually prohibits.

In short, Plaintiffs' arguments all suffer from the same defect: they identify fragments of TAL's overall offerings, and claim they violate Plaintiffs' own,

6

litigation-inspired definition of "academic" and unauthoritative and insufficiently pleaded view of what is prohibited under the Double Reduction. Indeed, Plaintiffs claim they rely on the "facts *Cailian* reported, not its conclusions," Opp. 24, but without pleading with particularity what the Double Reduction prohibits, Plaintiffs cannot rely on those "facts" to plead a breach (nor does Plaintiffs' assertion change that the *Cailian* Report agrees the term "academic" requires "urgent clarification," Mot. 13). Plaintiffs thus fail to plead that TAL offered courses prohibited by the Double Reduction, much less in a way that was knowingly or recklessly contrary to their public statements about compliance. That failure defeats scienter (and falsity).

## B.    Plaintiffs Fail to Plead Meaningful Enforcement

Plaintiffs fail to plead scienter for the additional reason that they allege no meaningful action on the part of the Chinese government to address TAL's supposed misconduct. Plaintiffs claim a supposedly brazen scheme in which China's leading tutoring company ignored the Double Reduction despite a robust inspection regime that was employed to enforce a "priority" policy initiative, AC ¶ 183, and further that this sprawling misconduct was laid bare by the *Cailian* Report. Yet they plead no government response. Plaintiffs concede they must plead "that notwithstanding this inaction by Chinese authorities, [TAL's] conduct did in fact violate Chinese law during the Class Period," Opp. 20, but insufficiently rely on the *Cailian* Report, which, as above, is not authoritative and called for "urgent clarification," Mot. 13,

7

and the IG and MOE guidelines, addressed above.  Further, by contrast to the *Twitter* and *LDK* cases Plaintiffs cite, Opp. 31-32, Defendants do not argue merely that absence of enforcement is exculpatory, but rather that Plaintiffs fail to plead what the Double Reduction prohibits in the first place, and that the single authoritative source as to the meaning of these evolving policies—the Chinese government—has taken no action despite the allegations above.  This further supports the non-culpable inference that the Chinese government disagrees with Plaintiffs' view that TAL systematically violated Double Reduction.[2]

Indeed, Plaintiffs concede that the only government action they allege relating to the Double Reduction is two, localized infractions, but claim that these are just the times TAL was caught.  Opp. 31.  But the allegations above, combined with the assertion that TAL's curricula (and thus purported breaches) were uniform, suggest that the national and local governments were actively looking for violations, and should have found them ***everywhere*** it looked—yet found them almost nowhere.  *See* Mot. 17-19, 34-36 (isolated violations insufficient to plead scienter or falsity).  The two isolated infractions not only fail to support scienter, they *disprove it*.[3]

---

[2] The Opposition falls back on unpleaded speculation about insufficient "resources" to pursue TAL or reluctance due to an unpleaded "youth unemployment crisis."  Opp. 32-34.

[3] Plaintiffs cite cases suggesting other large schemes have been concealed, so Plaintiffs' allegations of concealment here are not implausible.  Opp. 34-35.  Defendants' point is not only that TAL's actions were inconsistent with trying to conceal widespread illegality, Mot. 22, but that Plaintiffs **plead** it was **not** concealed.  Rather, TAL allegedly ***advertised***, and informed thousands of parents and students, that it rejected the Double Reduction.  *See* Mot. 22.

Plaintiffs fail to distinguish *In re Xunlei Ltd. Sec. Litig.*, 2019 WL 4276607, at *7 (S.D.N.Y. Sept. 10, 2019) and *In re DraftKings Inc. Sec. Litig.*, 650 F. Supp. 3d 120, 153 (S.D.N.Y. 2023). *Xunlei* requires a plausible allegation that "notwithstanding . . . inaction by Chinese authorities, Xunlei's conduct did in fact violate Chinese law"—*i.e.* government inaction is not itself dispositive. But, as in *Xunlei*, Plaintiffs offer the Court nothing that indicates, with particularity, what the Double Reduction prohibits. Plaintiffs also assert that, unlike in *Xunlei*, "TAL has not so much as provided a translation of the laws it deems exculpatory." Opp. 25. This is backward: Plaintiffs must **plead** a breach of the Double Reduction with particularity. Plaintiffs also claim that, in *Draftkings*, plaintiff pled specific foreign law because relevant governments "'have issued **unequivocal** pronouncements that online gaming is not legal,'" Opp. 25 (emphasis Plaintiffs') (quoting *Draftkings*, 650 F. Supp. 3d at 153), but that Plaintiffs here need not show the Double Reduction is "'unequivocal'" to plead liability. Opp. 25. Plaintiffs thus argue that where law is **less** defined, their pleading burden is diminished, for which they offer no authority or logic. And Plaintiffs do not deny that *Draftkings* requires a clear statement of foreign law before finding a breach.[4] Mot. 11.

---

[4] Plaintiffs misrepresent *Kauffman v. Nat. Health Trends Corp.*, 2019 WL 7165921 (C.D. Cal. Dec. 20, 2019), claiming it "**actually concluded that the company was violating the law and defendants knew it**." Opp. 25 n.5 (emphasis Plaintiffs'). In fact, *Kauffman* found that, **even if** plaintiff had pleaded knowledge of undisclosed illegality, plaintiff would still fail to plead a claim absent action by the government in connection with the alleged violations. 2019 WL 7165921, at *7. In *Kauffman*, too, plaintiff based allegations of law-breaking on a news report. *Id.* at *1.

C.    **Plaintiffs Fail to Plead Their FEs With Sufficient Particularity**

Plaintiffs rely on FEs to claim that TAL's syllabi and marketing materials were uniform and generated in Beijing, *see* Opp. 27-29, and therefore the Individual Defendants knew about TAL's alleged breaches of the Double Reduction. As above, Plaintiffs fail to plead such a breach at all, much less a knowing breach. Regardless, the FEs are not sufficiently particularized even to establish curricular uniformity. As the Motion explains, Plaintiffs offer virtually no direct quotes from any FEs, and *California Public Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126 (3d Cir. 2004), rejects FE-based allegations for, among other things, failing to specify *when* or *how* an FE learned the information attributed to them. Mot. 20. Plaintiffs claim *Chubb* merely "set out factors to be weighed," Opp. 30, but Plaintiffs offer no reason that pleading only an FE's job title and general period of employment is sufficiently weighty in light of *Chubb* and *Chan*. Indeed, Plaintiffs' authority, *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668 (3d Cir. 2023), explains in far greater detail how and when the FE acquired information, such as by "regularly attend[ing] Individual Life forecast meetings with the actuarial, capital, and financial teams." *Id.* at 691-92. By contrast, the Opposition argues that the FEs' general work on "course materials" or "marketing and sales promotion" means only they "would know" the information attributed to them. Opp. 29. And Plaintiffs' argument that

10

"it would be strange for witnesses to recall exactly when they learned unremarkable facts," Opp. 31, merely acknowledges Plaintiffs' failure to plead with particularity.

Notably, the sole FE who allegedly discusses the ***content*** of TAL's courses, FE 4, is insufficiently pleaded.  FE 4 was allegedly a "course consultant," but Plaintiffs' fail to plead what this title meant, FE 4's duties, or even ***which courses*** FE 4 "consulted" about.  Mot. 21.  Plaintiffs' response, that FE 4 "would know about the courses he was consulting on," Opp. 29, fails without this information.[5]

### D.    Plaintiffs Fail to Plead Knowing Misstatements About Courses

Unable to plead the content of the Double Reduction, Plaintiffs fall back on arguing TAL misrepresented the content of its courses.  This argument fails as well.

To start, Plaintiffs set forth an incorrect standard.  They argue the elements of scienter are only (i) "specific false statements" (ii) "about a key aspect of the company's operations" that (iii) "differed greatly from the true facts."  Opp. 35.  In other words, Plaintiffs argue that pleading false statements also pleads scienter—indeed, items (i) and (iii) are the same.  *See id.*  None of Plaintiffs' authority supports this novelty, but stands instead for the unremarkable proposition that Plaintiffs must "allege facts giving rise to a 'strong inference' of 'either reckless or conscious

---

[5] Plaintiffs characterize *Chan v. New Oriental Educ. & Tech. Grp Inc.*, 2019 WL 2865452 (D.N.J. July 3, 2019) (which rejects reliance on newspaper articles) as an "outlier district-level case." Opp. 30. *Chan*, of course, is from this district, and relies on *Chubb* in calling for allegations about when and how FEs acquired information. *See* Mot. 20. *Institutional Investor Group v. Avaya, Inc.*, 564 F.3d 242 (3d Cir. 2009), similarly calls for descriptions of "the time period during which the CWs acquired the relevant information" and "how each CW had access." *Id.* at 263.

11

behavior,'" and that such facts should be evaluated holistically. *See Avaya*, 564 F.3d at 267-68 (quotation omitted).

Plaintiffs' allegations do not meet even their improper scienter standard. By contrast to Plaintiffs' authority, where high-ranking company officials speak in detail on specific issues, the alleged misstatements here briefly address general efforts to revise coursework. *See, e.g.*, **Statement #3** (responding to analyst by noting TAL's "enrichment learning services . . . are very different from academic after-school tutoring and services"); **Statement #9** (responding to analyst that enrichment courses focus on "finding the right learning processes and user journeys for our learners and improving their satisfaction"). Plaintiffs' authority involves statements expressing certainty about specific operations, products, and processes— not general overviews that do not suggest knowledge of, or reckless disregard for, specific facts. *See, e.g.*, *Avaya*, 564 F.3d at 270 (CFO "flatly denied in statements evincing certitude" that Avaya engaged in "massive discounting on an unusually large scale"); *SEB Inv. Mgmt. AB v. Endo Int'l, PLC*, 351 F. Supp. 3d 874, 906 (E.D. Pa. 2018) (defendants' "public comments . . . confirm they had intimate knowledge of the data"); *Roofer's Pens. Fund v. Papa*, 2018 WL 3601229, at *21 (D.N.J. July 27, 2018) (defendants "repeatedly responded to pointed analyst questions regarding pricing pressure in the Generic Rx division" and "their answers indicated personal knowledge"); *Halman Aldubi Provident and Pens. Funds Ltd. v. Teva Pharma.*

12

*Indus. Ltd.*, 2022 WL 889158, at *14 (E.D. Pa. Mar. 25, 2022) (inferring knowledge of drug scheme where CEO "held himself out as an expert" on the drug, combined with the amount of funding that went to the scheme and drug's importance). Plaintiffs' scienter claims fail for this additional reason as well.

## II.   PLAINTIFFS FAIL TO PLEAD FALSITY

To start, the alleged false statements consist almost entirely of representations concerning TAL's efforts to comply with the Double Reduction (**Statements #1**, **#5**, **#9**, **#12**), or the content of its post-Double Reduction courses (**Statements #2**, **#3**, **#6, #7, #13**).  As above, Plaintiffs' assertions that TAL deliberately failed to comply with the Double Reduction, or misrepresented its courses—*i.e.* renamed them and continued as though nothing happened—are not supported by Plaintiffs' scattered assertions about (alleged) syllabi and a pair of infractions.  And Plaintiffs' failure to plead scienter by failing to plead breaches of the IG, for instance, also demonstrates the failure to plead misstatements about TAL's compliance or its courses.

The Opposition's other arguments about alleged misstatements also fail.  The Motion makes clear that **Statement #2**—that "enrichment programs are designed to capture" the demand "to develop as well-rounded people and lifelong learners"—is puffery.  Mot. 36-37 (citing essentially unanswered authority that statements about

13

achieving student success were puffery).[6]  The assertion that TAL is describing "hard facts" as to the "content and purpose of its classes" and "its customers" is belied by the vague language and unmeasurable goal of that statement.

Similarly, **Statements #8** and **#10**, that TAL is "healthy and "viable," are not alleged to be false.  Mot. 37-40.  To start, Plaintiffs *allege* that TAL's business "far exceeded analysts' expectations."  AC ¶ 90.  Nor do these statements "put the subject in play" of "the source of their revenues or income," Opp. 18, as they address neither topic, but express only the most general positivity.

Further, Plaintiffs do not dispute that "healthy" and "viable" are statements of opinion, arguing instead they "contain[] the embedded assertion that [TAL's business] is legal."  Opp. 19.  As detailed above, the facts, as alleged, would permit TAL to reasonably conclude that its courses are permitted under the Double Reduction.  And even if Plaintiffs disagree, it is not sufficient merely "to allege that an opinion was unreasonable, irrational, [or] excessively optimistic."  *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 754 (S.D.N.Y. 2018) (internal citation omitted).

---

[6] Plaintiffs' cases address more specific statements.  *See Weston v. DocuSign, Inc.*, 669 F. Supp. 3d 849, 881 (N.D. Cal. 2023) (statement concerned facts "go[ing] to the basis for statements about customer demand"); *City of Sunrise Firefighters' Pens. Fund v. Oracle Corp.*, 527 F. Supp. 3d 1151, 1184 (N.D. Cal. 2021) (statements "'affirmatively create[d] an impression of a state of affairs that differs in a material way from the one that actually exist[ed]'") (citation omitted).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Amended Complaint, in its entirety, with prejudice.

DATED:  New York, New York        Respectfully submitted,
    March 29, 2024

           **MARINO, TORTORELLA
           & BOYLE, P.C.**

           _____
           Kevin H. Marino
           John D. Tortorella
           437 Southern Boulevard
           Chatham, NJ 07928-1488
           Telephone: (973) 824-9300
           Facsimile: (973) 824-8425
           kmarino@khmarino.com
           jtortorella@khmarino.com

           **QUINN EMANUEL URQUHART
           & SULLIVAN, LLP**

By:  _Michael B. Carlinsky_
           Michael B. Carlinsky[†]
           Xiao Liu[†]
           Jacob J. Waldman[†]
           51 Madison Avenue, 22nd Floor
           New York, New York  10010-1601
           Telephone:  (212) 849-7000
           michaelcarlinsky@quinnemanuel.com
           xiaoliu@quinnemanuel.com
           jacobwaldman@quinnemanuel.com

           _Attorneys for Defendants_

---

[†] Application for admission _pro hac vice_ forthcoming.

15