# Exhibit 3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____

JORDAN LEWANDOWSKI,
individually and on behalf
of all others similarly          CIVIL ACTION NUMBER:
situated,
                                 2:23-cv-1769-MEF
     Plaintiff,
                                 Oral Argument
          vs.

TAL EDUCATION GROUP, and
BANGXIN ZHANG,

     Defendants.
_____

     Frank R. Lautenberg Post Office and Courthouse
     Two Federal Square
     Newark, New Jersey  07102
     October 23, 2024

B E F O R E:                THE HONORABLE MICHAEL E. FARBIARZ,
                            UNITED STATES DISTRICT COURT JUDGE


A P P E A R A N C E S:

     MARINO, TORTORELLA & BOYLE, P.C., BY:
     KEVIN H. MARINO, ESQ., ESQ.
     JOHN D. TORTORELLA, ESQ.
     437 Southern Boulevard
     Chatham, New Jersey  07928

          appeared on behalf of Plaintiff;


          Lisa A. Larsen, RPR, RMR, CRR, FCRR
               Official Court Reporter
          Lisa_Larsen@njd.uscourts.gov
                 (973)776-7741




     Proceedings recorded by mechanical stenography.
     Transcript produced by computer-aided transcription.

**A P P E A R A N C E S**: (Cont'd.)

THE ROSEN LAW FIRM, BY:
JONATHAN HORNE, ESQ.
275 Madison Avenue
New York, New York  10016

            appeared on behalf of Defendants.

(PROCEEDINGS held in open court before the

HONORABLE MICHAEL E. FARBIARZ, United States

District Court Judge, on October 23, 2024.)

THE DEPUTY CLERK:  All rise.

THE COURT:  Folks, good morning.  Please have a seat.

We are here for oral argument in *Lewandowski vs. TAL*.

Appearances for the record, beginning with the

plaintiff.

MR. HORNE:  Good morning, Your Honor.  Jonathan Horne,

Rosen Law Firm, for plaintiffs.

THE COURT:  Mr. Horne, good morning to you.

MR. MARINO:  Good morning, Your Honor.  Kevin Marino,

Marino Tortorella & Boyle, for the defendants.  With my is my

partner John Tortorella.

THE COURT:  Good morning to each of you.

Who is going to be doing the talking today, Mr. Marino?

MR. MARINO:  I will do so, Your Honor.

THE COURT:  I read all the papers.  I just want to give

a preliminary thought.

Mr. Horne, it's largely directed to you.

I kinda don't get the translations that come in on

reply and in general the lack of translation of documents.

Obviously both parties are very sophisticated and the briefing

is wonderful from both sides, but I don't understand why we're

in a place where I'm to make a decision here without, as the

defendants point out in their motion, a lot of materials translated and, not for nothing, with what might be the core regulatory assertion from Chinese authorities summarized, paraphrased, and maybe even occasionally quoted but simply not provided.

Why put us in a place where we just don't have those materials?  Which is to say either full translations or the regulatory assertion from the Chinese authorities.

MR. HORNE:  Well, Your Honor, the key document here is not the double reduction itself.  It's the identification guidelines.  The double reduction -- we're happy to submit a translation.

The double reduction contains a number of regulations that apply to companies that offer academic tutoring, regulations about marketing, regulations about this, this, and the other.

THE COURT:  Right.

MR. HORNE:  But the gist of it, the part where the Chinese Ministry of Education explains why or what academic tutoring is, that's in the identification guidelines and that is translated.  That is Exhibit 4 to the -- our opposition to the motion to dismiss.

THE COURT:  That's a little bit my point, which is to say it's not in your complaint, it's not attached to your complaint.  The defendants make hay of it.  It's a context in

which that's a relevant document from everyone's perspective and it comes in in your response, in your reply.

I just don't get it.

MR. HORNE:  That's not correct, Your Honor.  The identification guidelines are actually quoted in our complaint.  The document itself we didn't supply.  The relevant portion, though, is in the complaint, you know.

In opposition we thought to bring in the rest of it, but the only thing we ever rely on is the portion that's in our complaint.

THE COURT:  Okay.  That's a fair point.  I get it.  But in general it's just a little strange.  There is just a scattershot use -- there's such a heavy reliance on a certain set of documents that are not either formally translated or that are provided in snippets.  It's just a strange way to proceed.

There are important documents in cases like this all the time.  Right?

One of the basic debates between yourself and your adversary -- your way of framing the case is essentially the regulation itself created such a large risk to the basic business model of TAL that that's a risk that should have been disclosed and the corrective disclosures don't cut it.

The theory of the defendants is something like:  Well, there are no enforcement actions so that is not quite as

important.

But on your theory, which is to say that the regulation itself generated the risk, it's strange to have gotten such a small smattering of the reg, and it's also strange that many core things are not translated.

On the defendants' theory, no biggie.  On the defendants' theory, what matters is there's, in their telling, only a smattering of regulatory actions and they're mainly local.  But on your theory, which is that the regulation itself creates the risk, I just struggled along with the defendants with the lack of translated and complete materials.

MR. HORNE:  From our perspective -- we're happy to submit a translation of the double reduction itself, but in and of itself it doesn't explain what academic tutoring is.

THE COURT:  But that's the defendants' point.

MR. HORNE:  The identification guidelines explain what academic tutoring is, and we quote those in the complaint.

THE COURT:  I got it, but the problem is is for me to evaluate -- this is the slippage happening.  Right?

The defendants are saying -- I actually don't know this.  The report that functions here on your theories, that corrective disclosure, is that a short-seller report or is not?

MR. HORNE:  It is a media report, Your Honor.

THE COURT:  It's a media report.  Okay.

So the media report that -- and the defendants love this point.  They love making the point that:  Well, even the report that you're citing as to that one there's a reference to confusion about what academic means and the report says, gee, it would be great to have more clarity.

Clarity is very important for your argument.  It's very hard for me to evaluate that argument when what you're essentially saying through the materials you put in front of the Court and that which you've opted to translate is:  Hey, there's clarity over here on my right hand and you don't have to worry yourself about what's in my left hand and so I'm not going to provide it to you.

It creates what feels to me like a pretty unnecessary barrier to getting down to the merits of the case.  I don't know how to fix this except to say this strikes me as a situation which there's gonna be a whole lot more work made for me for just lack of having translated documents where they should be in the complaint or in its attachments.

I'm not sure what to make of it.  It's a strange situation that just kind of creates work and creates layers of complexity.  It's hard to evaluate this case in particular without those sorts of materials.

MR. HORNE:  We do apologize.  We certainly didn't intend to create more work for the Court.

THE COURT:  First of all, don't apologize.  I didn't

mean it as a comment that's personally critical or professionally critical.  I just meant it's one of the things that I took away from -- I didn't perceive any gamesmanship in you providing it later.

I just mean I found myself nodding along with the defendants in their brief in saying, gee, this is tough to evaluate for me without translations and without a fuller sense of what the regs are.

It's a lot for me to go on, "Don't worry about the reg, just worry about the interpretive guidance, as it were" without my seeing the regs and without having the ability to touch it.

I don't want to be understood as suggesting you have done something improper.  You haven't.  I meant it as a substantive observation.

MR. HORNE:  Okay.

As to the second document, the CaiLian report, we do quote and cite the relevant bits in our complaint, and in our opposition we attached a translation of the document.  So the translation of the document is only there to back up our allegations, but the allegations in the complaint, you know, set out the relevant parts, the parts that we're relying on.

THE COURT:  Right.  I got it on the report.  All right. Thank you very much.  I appreciate it.

So it's Mr. Marino's motion.  I'll let him do the

talking.  Have a seat.  You're good.  Thank you.

Mr. Marino, I noticed when you were in here on the other proceeding, you had an issue with your leg.  If it's more comfortable to sit, you should do that.

MR. MARINO:  No, no.  I'm fine this way.

THE COURT:  I want to just tell you straight out my preliminary hunch is this is not a motion to dismiss I'm going to grant.

MR. MARINO:  I'm sorry, Your Honor.

THE COURT:  This is not a motion to dismiss I'm going to grant.  That's my preliminary hunch.

MR. MARINO:  I guess my preliminary job is to try to talk you out of that.

THE COURT:  No doubt.  I wanted to ask you a different question.

As I said to your adversary, I was sympathetic to some of the wrestling you were doing with the lack of translation.  Is this a situation where in fairness what you want is an amended complaint with fuller translations or anything of the kind?  I don't want to truncate your ability to advocate.

MR. MARINO:  I don't believe so, Your Honor.  I guess I'm a little concerned because Your Honor correctly points out the fundamental deficiency in the complaint.  I will describe it as a deficiency.  I think it's a dispositive deficiency.

It is incumbent upon the plaintiff, as Your Honor is well aware, to make its case, put its allegations in place, and then they're entitled to have --

THE COURT:  Mr. Marino, let me cut to it for you.

Here is the difficulty I think you have:  I understand their obligation and they have the burden, and if I were to say as a formal matter to them, "There's not translated documents, there's not the reg," then I'd really be saying simply something formal and I would let them re-plead to add those things.

So I think the complexity is if you're telling me in the nature of fairness you want to see that stuff in the complaint and in the nature of fairness you need it, great.

If what you're saying is they have failed to put in a key regulatory document, I'm not unsympathetic to that -- I'm not sure what I think -- but then the answer is I can grant your motion to dismiss without prejudice to them simply re-filing.

MR. MARINO:  Let me tell you why I don't think that would be the right thing to do.

THE COURT:  Okay.

MR. MARINO:  It has nothing to do with technicality or -- I quite take Your Honor's point, which really is our point in a way.

Our point is not:  Hey, you didn't provide the

document.

Our point is:  Your complaint has to be judged on its own terms.

That's what we have.  We have their complaint.

Now, as Your Honor may be aware, under the New Jersey Court Rules, there's a Rule 4:18-2 that entitles you to get on five-days' notice any document that is referred to but neither quoted verbatim in nor attached to the complaint.

That doesn't exist here.  If it did, I would have availed myself of that and then we would be having that discussion.  Right?  But we find ourselves and Your Honor finds yourself in this quandary completely as a result of how the plaintiffs chose to approach it.

What I'd like to spend a few minutes talking to Your Honor about this morning is why I think that's not by accident.

They obviously are aware, one can assume, that consistent with Rule 11 they wouldn't be filing this complaint if they were not aware of exactly what the double reduction or in some translations dual reduction actually says.

I think if you read their complaint with care, as I know Your Honor has and obviously as we have, you turn first to paragraph 67.  Paragraph 67 is the paragraph that introduces us to the foundational document.  Right? (Reading.)

On May 21st, 2021, China promulgated its most stringent ever regulation on the after-school tutoring sector.  That day, the 19th session of the Central Comprehensive Deepening Reform Committee, presided over by Xi and attended by top leaders in China, approved the, quote, opinions on further alleviating the burden of homework and after-school tutoring for students in compulsory education.

They define it as double reduction.  I might have defined it as the opinions.

THE COURT:  Then what I recall from the next paragraph of the complaint is it describes the publication of it a few months later in the next paragraph.

MR. MARINO:  In July 2021, the text of the double reduction was released.

THE COURT:  Right.

MR. MARINO:  Now, when you ask counsel about this, basically, well, where is it, right, which is the obvious question.  You're telling me the foundational document -- and understand when I say "foundational," this is the thing that we are supposed to have lied about.  We are supposed to have lied about our compliance with respect to this document.

They don't leave anything to the imagination.  It's not as though this is some attempt at a notice pleading.  This is

a lengthy, some would say even prolix, complaint that goes on, 68 pages of length and many, many, many paragraphs.

And they're quite specific in this way.  They will tell you what in essence the double reduction means, which is for our purposes here today you have to take a good, hard look at these after-school tutoring classes and basically not have them -- at one point they use the word "ape," the academic learning that goes on in the school.

Now, I could opine and Your Honor might as well that there's a little bit of what might be fairly referred to as value signaling there or virtue signaling.  Right?

We're going to tell you we have a problem in China.  Here is the problem:  These parents are spending an inordinate amount of their disposable income because they feel they have to do so.  Right?

That is a very negative reflection on the compulsory education that the state is providing in China.  Right?  Every day they're giving you your academic training.  Those are the hours of the day that you the student are supposed to be spending learning.  Right?

But that's apparently not good enough, which is why after-school tutoring has flourished.  So out come the opinions which basically say:  We have to curtail this.  We don't want you re-doing after school what is being done effectively in school.

I suggest a germ of mischief that might give Your Honor pause about whether this is really a problem of, well, we just didn't provide the translation.  Because obviously they read it or they wouldn't be in court.

These are good lawyers.  These are very careful lawyers.  They litigate these cases all over the United States.  They know how this works.  Right?  So they have read it.

They have made a tactical decision which not dismissing this case for failure to state a claim would respectfully reward.

THE COURT:  Mr. Marino, I come back to the reason -- obviously I've read the complaint closely.  That's why I come back to what I said virtually at the outset with you, which is, okay, I can dismiss without prejudice and --

MR. MARINO:  Why without prejudice?  Let's think about this for a second.  And just bear with me.  I hear you, Your Honor.  I know because as always you're very transparent about your inclinations.  No secrets here.

THE COURT:  I'll tell you why.  The first complaint filed here, not this one, was plainly a very spare placeholder and spun around pretty quickly.  And I understand the reasons why plaintiffs' lawyers put in a spare placeholder.  I get it.  This is essentially their first complaint.

MR. MARINO:  But here is the problem, Judge:  The

problem is -- let's take it in two steps.  Let's substantively for a moment jump from the procedural problem that Your Honor is confronting as sort of a threshold issue and let's jump to the substantive problem.

Here is what it is:  This is not something with the force of law.  This is not a law that we broke.  You have to do A, B, C.  You didn't do A, B, C.  You said you did A, B, C.  That's loss causation.

That would be an appropriate complaint.  That's not what we have.

We have opinion.  Okay.  It is not quoted here for you.  I obviously have read it.  I know what it says.  It's not incumbent upon me to produce it.  I could easily do so.  That's not my job, and that's not something I should do.

Because when I get a complaint, particularly an amended complaint, and it's now incumbent upon me to articulate my response to that complaint, my responsive pleading to that complaint is what you have articulated in your complaint first at paragraph 67, here is what the opinion says, and then counsel says they quote it.  Yeah, they do quote it in places.

But nothing removes the obvious conclusion or prevents Your Honor or us granting them the benefit of all reasonable inferences from concluding this is the best they have.  That's what they put in their 68-page complaint.

Now, what is it?  It says, quite clearly, what the

opinions are, that in broad brushstrokes we shouldn't have this reduction, you know, double-dipping on tutoring in addition to what's happening in the school day.

Let me get to what they say is the main point here, which is paragraph 125.

(Reading.)

On November 8th, 2021, the General Office of Ministry of Education promulgated its Guide to Identification of Extracurricular Tutoring Programs for Compulsory Education, defined as the identification guidelines.

And then they list four of them.  They don't attach that document either, but they're quite specific about what it says. (Reading.)

The objective, quote, aimed at academic knowledge and skill tutoring.

The methods focuses on explain academic knowledge.  The evaluation, the emphasis on student evaluation is on selection and screening mainly based on academic performance.

The problem with that is there isn't any "there" there. You're telling us that in our very specific statements, which they quote and we'll talk about those in a moment if Your Honor will permit me, we lied.  We said we are complying and we're not complying.

First of all, the reason you don't have the

foundational backbone is that there isn't a requirement to be found in that instrument.  There are opinions about what might happen.  It's entirely aspirational.

Here is what the public is assured of in China:  In one year it's going to be better, in two years --

THE COURT:  Can I just pause you for just a second.

MR. MARINO:  Sure.

THE COURT:  I think this does speak to a little bit of a related but different issue, which is there's a question of what documents the plaintiffs did or did not include.

My sense that I'm unlikely to grant this motion to dismiss does run through a premise that I was going to take up with your adversary that you've lightly alluded to, which is, aside from the lack of completeness, the premise of my sense that this is not a motion to dismiss to grant is largely an assumption that the documents that are the operative governmental documents from what sound like regulatory entities have the force of law --

MR. MARINO:  I'm sorry.  I didn't hear.

THE COURT:  Have the force of law in China.

One thing that I have struggled with, and this is to preview a question that I have for your adversary, is how I know from the complaint that there is a kind of legal obligation not to do A and B and what the legal status of guidance is.

In the United States I would know what to do to -- if there is a statute and then there's a regulatory enactment that follows on it, I would understand the relation between the statutory command and the regulatory fleshing out.

Here it's not entirely clear to me -- and you'll get a chance to speak to this. It's not entirely clear to me from the complaint how I know what the relationship is between the instructions that you focused on and the opinion which purports to have the force of law.

All of that is to trade on a background assumption I have but one that may or may not be warranted about the relationship between a legislative style command and then the follow-on fleshing out from a regulatory style entity.

Those are things that I am not -- that's the premise of how I'm starting to think about this; but whether that premise is right or not, it needs to be in the complaint and maybe it needs to be elsewhere, as well.

MR. MARINO: We're having a -- in a way, we're having a discussion that this complaint and this motion is a jumping-off point for. That discussion is this: This is -- as I understand because Your Honor has been characteristically transparent about it -- what troubles you. Right?

So the question is: What is the function of the court on a motion to dismiss a complaint for failure to state a claim where that complaint in question purports to and

contains allegations of fraud?

The fraud is you didn't do what this law requires you to do, but I as the master of the pleading on the second try, not the first, have decided to make it quite elliptical for you.  That's what they decided to do.

So what's the job of the Court?  What was our job? What were we supposed to do?

I know what those opinions say.  They have said about them what they have said about them.  There is no question in my mind that their allegations as currently constituted do not remotely articulate in paragraph 67 or in the guidelines at paragraph 125, which purport to elucidate what's going on in paragraph 67, neither of those does the job that the plaintiff has in this pleading.

That job is to say -- the reason I keep going forward to the fraud is because that's the foundation.  The foundation upon which the allegation of fraud against the defendants is premised is this set of rules that aren't rules at all.  It's an opinion.

These guidelines, just think about guidelines.  Is that what any statute Your Honor has ever seen in the United States or anywhere else is a set of guidelines?

Suppose for a moment that the allegation here was that we had violated -- make up whatever statute.  Mention whatever statute you wish.  RICO, which has quite specific requirements

about pattern, about enterprise and so forth.  Right?

But I'm not going to put the statute in and I'm not even going to tell you exactly what the specific statements in that law are.  So I'm not giving you a copy, I'm not quoting it verbatim --

THE COURT:  Mr. Marino, I hear you on much of this, and I don't know if I substantively agree with you or not but I hear you on much of it.  I'm going to come back to the same two issues.

MR. MARINO:  Sure.

THE COURT:  I think there is a little bit of lack of educating an American lawyer, me, not from you but from your adversary, about the role of these guidance documents and whether -- what has the force of law and doesn't.

That's an issue that I preview that I want to ask your adversary about.

But the second problem you have -- and I'll just leave it there and let you continue -- is I agree with much of what you said though not all.  The key word that's doing a lot of work for you is amended complaint.

As I told you from the outset, that doesn't sway me very much.  This should be a relatively straightforward fix.  The relatively straightforward fix, we all know if this were the original complaint is I would grant the motion without prejudice, they would re-file, and it would either be taken

care of or not when we get to the substantive point.

Your point is:  Gee, we're in an amended zone.

But I read the original complaint.  I read this one. The first one was the sparest placeholder.

My inclination, if you're right, would be to grant the motion, do it without prejudice, and then we'd come back in 3 1/2 weeks but we'd be in -- if what the plaintiff is suggesting has the force of law, if they plead properly that it has the force of law, I'm still in the same place, which is I'm unlikely to grant what I assume would be a relatively similar motion.

MR. MARINO:  The reason I don't understand that is as follows:

Let's assume for purposes of argument, as Your Honor has indicated, that your inclination is to excuse this decision-making that put you and us in the position of not actually having a document that you can assess and we can assess.  I can make arguments as to why this isn't sufficiently specific to give rise to, you know, the sort of falsity that we're accused of here and so forth.

THE COURT:  Right.

MR. MARINO:  Let's move on from that.  They allege at paragraph 150 of their complaint that in our 2022 annual report Form 20-F, which was filed on February 28th of that year, we say:  (Reading.)

Due to the complexity and substantial uncertainty of the regulatory environment, we cannot assure you that our operations would be in full compliance with applicable laws, regulations, and policies, including the alleviating burden opinion --

Referred to here as the double reduction. (Reading.)

-- and its implementation measures in a timely manner or at all.

Here is what happened, Judge:  Forget about this opinion and what it says.  We know --

THE COURT:  What's the timing of the statement that says "we have fully ceased"?

MR. MARINO:  I beg your pardon, Your Honor?

THE COURT:  "We have fully ceased."

MR. MARINO:  On what day is that done?

THE COURT:  Where does that stand in relation to the disclosure you just described?

MR. MARINO:  The statement that you're averring to they're describing January 14th, a month before, a month before.  Right?

So you can look at this a month later as clarifying, but a month before this is what they quote at paragraph 144 (Reading.)

On January 14th, 2022, TAL filed a current report on Form 6-K, which Defendant Peng signed... provided in relevant part:  On November 12th, 2021, the company issued a press release to announce that in response to the regulatory developments relating to after-school tutoring services, including the opinions and further alleviating the burden of homework...

And so forth, the opinion, et cetera.  (Reading.)

...the company decided to cease offering academic subjects.

Let's put that word in highlighting, academic subjects from kindergarten through 9.  (Reading.)

The company has completed the cessation by the due date and expects that the cessation will have a substantial adverse impact...

On its revenues and so forth.

That's what Your Honor is referring to.

THE COURT:  Right.  But that's the point.  So --

MR. MARINO:  Let me finish, if I may.

THE COURT:  Sure.

MR. MARINO:  The end of that paragraph, 144, continuing to quote from the same public pronouncement, the same Form 6-K.  (Reading.)

The company will continue to seek guidance from

and cooperate with government authorities in variance provinces and municipalities in China in connection with its efforts to comply with the policy directives in the opinion and any related implementation rules, regulations, and measures.

The company will further adjust its business operations as required and update its shareholders as appropriate.

You cannot escape the conclusion that we are reacting to something that is not entirely clear, something that is not -- we talk about the force of law.  This is not something that proscribes particular behavior.  It speaks in generalizations about moving from academics to enrichment.

But you and I could well appreciate that there are many things in which something that might be averred to or referred to as academic could also be termed enrichment.

There's a lot of mathematics in music teaching. Anybody that has ever studied music knows this, but no one would suggest that music instruction, however much there might be mathematics involved in it, is not enrichment and somehow would violate this very general, very amorphous rule.

That's the problem.  This is what's troubling me so much --

THE COURT:  I know, but, Mr. Marino, here is the problem:  I appreciate the possibility that your client

perceived great ambiguity and great uncertainty in whatever the underlying legislative/legal command is.

The problem is the first statement, which is the one I wanted you to come to, is just a flat black and white statement "We're done."

MR. MARINO:  Judge, we believe we are done.

THE COURT:  I know.

MR. MARINO:  But why wouldn't we be able to say that? Why couldn't we say, "Here is how we read your opinion, okay, and we no longer have a class called math where we teach the same principles you're learning during the day"?

THE COURT:  But your adversary does a good job of that. He puts it well.  It's the only use of the word "subjective" in anyone's papers.

But the argument here is really about recklessness in scienter.  There is a recklessness in saying "we are done," and it's not saved by you saying it was confusing.

What you're trying to do, I think, is by saying what it's saved by is the disclosure a few sentences down.  I hear that that's the best place for you to stand, but that's a pretty generic invocation of "We have stopped something regulators don't like and we are gonna keep working with regulators."

The latter piece does not function as a -- the latter piece is a prospective statement of working with regulators.

The former piece is potentially actionable under the securities law because it's a backward-looking statement of fact.

So just conceptually, right, we're all trial lawyers here.  This is a little bit like the difference between that which is backward-looking, factual, and hearsay and that which is prospective in aspiration, which is less.

It is very, very tough for you to say that your adversary has a backward-looking statement that's unqualified which stopped and the forward-looking statement "we're gonna work with regulators" does not shift the backward-looking statement.  It's a prospective aspiration or commitment.

MR. MARINO:  Respectfully, that plays directly into the hands of a plaintiff that by design, despite having the document and reading the document and feeling free to make allegations about what it says, doesn't include it.

Because what Your Honor is saying bakes in and embeds this erroneous notion that there is something that we didn't actually cease.

We said the company has completed the cessation.  What have we completed the cessation of?  The cessation of academic training as we understand it.

The reason, the problem -- I ask you just to examine this for a moment because I hear what you're saying about backward-looking statements, and I completely agree with

Your Honor.  Here is the problem:  You are looking backward at a statement that I ceased doing something that was made clear.

What I'm saying is they told me don't -- here is my guidelines, here is my opinions.  You're starting to understand why this isn't in the document, why you don't have a copy of it.  Because it's aspirational.

I could -- it's not before you.  I could quote at length from that document for you and show you that this bears no relation to a statutory pronouncement or something that actually makes clear to a company this is exactly what you must not do.

What we believe we did was cease doing what they didn't want us to do, which is say we're teaching academics.  So, no, we're not teaching academics.

They go on page after page after page "We have one syllabus and the syllabus says this."  We should say that they are really just -- when they say it's creative thinking, it's really science.

But think about that.  That is a subjective determination, and the germ of mischief does not come from TAL.  The germ of mischief comes from the opinions and they know it.  This is the problem.

Think about it this way for a moment, Your Honor.  I appreciate you're allowing me to make this argument because I feel very strongly that to not deny -- to deny this motion, to

not grant this motion and say you as the master of this document on the second try gave me 68 pages but the foundation of it all is not there, why isn't it there?

It isn't there because putting it there would enable Your Honor to say -- to assess in the proper light our allegation set forth here in the document that you directed my attention to that we ceased it.

THE COURT: I got it. I hear the problem. I do. I think the difficulty from my perspective is they're very hard questions. The law has shifted on how you find foreign law from a factual to a legal question. We all understand that.

There are very complicated questions now that I would have to resolve on this complaint about the pleading of foreign law. So while I appreciate -- you are saying it's nefarious and doesn't reach the right standard.

What I see is an incredibly complicated question for me that is probably easily resolved; and if it's not easily resolved, you can come back in three weeks and tell me that.

MR. MARINO: Let me make a suggestion to Your Honor.

THE COURT: Let me finish.

MR. MARINO: Sorry.

THE COURT: No worries.

I think the issue is just -- the read you want, which is kinda categorically not putting this document in front of me, is just a failure to burden of proof. There are more

than little scraps on the other side of the ledger in the pleadings that I'm required to credit that I now have to aggregate up.

So there's a kind of artificialness to what's being asked of me.  I don't view it as egregious as you do, and I also kind of telegraphed my thinking because my intuition -- I haven't sat down to write anything, but my intuition is if I aggregate this stuff up, it's gonna be more helpful to your adversary.  But rather than engaging in this, my desire always is to get to the merits.

MR. MARINO:  When you say, "if I aggregate this stuff up," what are you referring to?

THE COURT:  What I mean is that the non-inclusion of the so-called opinion is not a categorical failure because, as Mr. Horne kind of alluded to when I opened with these questions, he said, "Well, we don't have to quote everything."

Let me give you an example.  Every single securities fraud case I have includes a 10-K or an 8-K.  I'm exaggerating.  I have yet to see one that includes the whole 10-K or the whole 8-K.

His point is:  Look, we gave you the excerpts you needed and the rest is in our complaint and you got to credit it.

What I'm trying saying to say to you, Mr. Marino, is that doesn't sound -- when I look at the excerpts that I have,

when I look at the scraps here and there that are in the complaint that I need to credit at this stage, those look to me like they probably add up to a legislative style command but it's a very hard and complicated question.

Instead of saying they haven't met their burden, I am left with a very hard question about highly technical pleading things that strikes me as, oh, my gosh, what a way to spend time.  Instead, let's spend time on getting to the substance.

MR. MARINO:  I have a proposal --

THE COURT:  There's a way to get to the substance.

MR. MARINO:  There is.  And I have a proposal.

THE COURT:  But it's not the way --

MR. MARINO:  I'm going to propose something I think Your Honor is going to like.  I'm trying to put myself in your shoes because I think this is what you're wrestling with.

I don't want to dismiss a complaint if there is somewhere in here, even though it's not explicitly in here, the fundament of a cause of action.  I don't want to say no to it without making that decision on a full record.  That seems like a fair assessment of where you are.

Let me suggest this:  Don't rule on the motion at all. Give them the opportunity to give you and give us proper interpretations, that is to say, a proper authenticated translation of the opinion and of the guidelines that are set forth in --

THE COURT:  Stop right there.

What do you think?

MR. HORNE:  Your Honor, I understand where the Court is coming from.

THE COURT:  Here is where Mr. Marino is.  Where Mr. Marino is is, "Oh, my gosh, I got 500 cases.  He wants me to resolve this motion on the merits and resolve it and" -- not to speak for you, Mr. Marino, or to read your mind.

But Mr. Marino doesn't want the motion granted with leave to re-plead and then we come back and then, oh, my gosh, another lifetime is passing, Mr. Marino doesn't get to it.

I respect that.  I hear it.

So why not solve the problem in the way he's describing?  Why not get to me a letter that says the parties agree that here are eight or ten materials that the Court can consider as part of its ruling on the current motion to dismiss.  You can each add a couple pages of briefing as to what you think the significance of it is.

Rather than spending the time of dismissing -- and I have telegraphed where I'm going to go -- I would let you re-plead.  Instead of spending all that time, which as a plaintiff's lawyer you probably don't want that time spent either -- it's a practical suggestion.  Why not proceed that way?

MR. MARINO:  I agree with the Court that the second option, the dismissing with leave to re-plead, is not optimal. If it's a choice between that and simply submitting a letter, then I think we'd go with the letter.  We think that's a good idea.

That being said, we think there's more than enough in the complaint to plead a case.

THE COURT:  But you heard what I was saying to Mr. Marino.  The problem is that the law is known for its artificial reason but, boy, that gets awfully artificial.  I'm going to have to take out my magnifying glass to words here and there, and that's just not a way to give the parties or the public an on-the-merits ruling.

Unless you have some big aversion to it, the letter is gonna get us the right kind of merits resolution here.

MR. MARINO:  I think with respect to my adversary, the question isn't did they break the law.  The question is were their statements accurate.

Their statements weren't:  We followed the law.

Their statements were:  Here are our classes.  This is what we teach.  They're different.  Everything is different now.

Those statements are gonna be false, irrespective of the fine details of the double reduction.

THE COURT:  Look, you are the master of your complaint.

You have opted to identify not one or two statements but a bunch.

For example, the statement that I think -- here is the problem for you:  If you say, "We're not doing this" -- this is me intuiting your side of the house.

If you leave it with just a couple of small but narrow gauge statements that say, "We're not doing this, we're not doing this," then Mr. Marino jumps up at the oral argument in front of whoever the district judge is and says, "How can there be scienter?  It's one pinprick in a big company in a giant empire."

So as a result, I'm imagining, you end up also invoking a broader statement, which is the one that Mr. Marino quoted to me most recently.  And invoking the broader statement, though, that broader statement kinda gives you a better argument on scienter because you get to use the core operations doctrine, et cetera, but the thing about that broader statement is it runs smack dab through a hypothesized gulf between the reg -- I'm using an American term for it -- and the conduct of TAL.

So while I appreciate what you're saying, it just only works for some of what you have in terms of statements you've identified.  It doesn't work for the main event statement, which is the statement that is most important to your argument about scienter.

So I don't think you can -- if you want to trim away the main event statement and want to just have it be the narrow gauge statements, you can walk away from certain statements and then I suspect Mr. Marino will care less about the reg.

But the complaint as it currently exists, at least one of the statements and probably more of them, requires me to have some understanding of how big that gap is between the regulatory assertion and the conduct of TAL.

MR. MARINO:  That's exactly where we are, Your Honor.

When you talk about a letter, all I want them to do is to provide Your Honor with the document that's not attached, which is the foundational document.  I don't want them to make more argument and then I'm going to make more argument.

It's very simple.  You could easily look at this complaint and say, "Judging it against the 12(b)(6) standard, I'm going to dismiss it without prejudice, come back and fix it" and so forth.

I think it's a waste of time for the reasons you've indicated and also not quite fair under the circumstances.  I think the fair and the right way to do it is let's have them provide you with a true translation.

Let's have them provide you with a true translation. That's not hard.  Get it authenticated, a translation of the opinion.  That's it.  And they can give you an authenticated

translation of the guidelines, too.  They don't attach that, either.  But that's it.

Then let's come back and have this discussion again then because then it's a fully informed discussion.  What we've done is -- in addition to saving the time, the money, the efforts, what we have also done is we have actually I think addressed what is the most significant problem to Your Honor, which is you want to get this right and you're not comfortable you're getting it right because you're not seeing enough.

You're hearing how they assess it, you're hearing what they say, and you're reading our statement about cessation and our other statements but those can only be viewed through the lens of what they've told you about the opinions.  So you're in a much better position to make a decision.

I just think this is not complicated.  There doesn't need to be more argument.  Oral argument is great.  It's, I hope, helpful and illuminating, but we can get back and do that in a week or two or whenever Your Honor wants to do it. I know you have a tremendously busy calendar but whenever you want to do it.

All we need them to do is give you the translation. They better have it already, given the fact that they have made these allegations; but if they don't, they'll find it pretty quickly.  It's not that hard.

Once they do, they provide it to you, they provide it to me, and we schedule the argument.  I really think that's the right way to go.

MR. HORNE:  I mean, we take the Court's point.  We can easily -- I have the text with me.  We can easily submit a translation.  Verified or not, I don't know if it matters at this point.

THE COURT:  Well, it doesn't matter to me, if the parties agree.

MR. HORNE:  Right.

THE COURT:  Here is what I would say:  Are there any other documents that you think -- I don't really want to come back and have a discussion about missing documents that are essentially important to both sides.

Are there any other documents, Mr. Marino, from your perspective that remain missing?

MR. MARINO:  I don't think so, no.

THE COURT:  Do you think there are any other documents that --

MR. HORNE:  No.  I think everything else is in the record, Your Honor.

THE COURT:  We'll continue discussing it in a moment, but why don't we do the following:

There is one related legal issue that I alluded to that I think is probably -- the papers are great, as I said, but I

just think I need a little more on.  It's very closely related to everything we discussed until now so I want to bring it up now.

The first thing is what I'd love to get is a joint letter from the parties -- I don't know how long it's going to take you all but God bless, whatever it is, a week, a joint letter from the parties that say:  Hey, we agree that Exhibit A is, number one, an accurate translation of what it purports to translate, we agree that the Court can rely on it in deciding this motion; and, finally, this document that is Exhibit A, it's the document called such-and-such in the complaint.

That will just end it.  The legal issue that's out there that I feel I need a little more on is the question of the legal status of the various materials.

So I have made in suggesting that I'm uninclined to grant this motion certain assumptions that may be substantiated by what's in the complaint or may not be, but certain assumptions about the force of law associated with the opinion and the force of law associated with the instructions.

I think it would be helpful for me to get, separate from the letter I'm talking about, a two-page letter from each side discussing those issues.  The foreign law question is a little bit complicated, and it would be helpful to know.

MR. MARINO:  Can I ask Your Honor if I -- I completely

agree with you.  Can I ask Your Honor if you would have the plaintiff provide us its -- whatever you say, two, three pages, whatever it is, on that subject and then let us respond to it?  I think that's the right way to do it.  And if that's acceptable to Your Honor, that's how we do it.

THE COURT:  I agree.  It's really --

MR. MARINO:  It's a pleading.  It's either a pleading deficiency or it's not.  They're going to say, "Here is what it is," and you're going to respond.

THE COURT:  It's a little complicated because in the old days when foreign law was found as a matter of fact it was a pleading deficiency.  In the current world where foreign law is found as a matter of law, there's at least an argument that it's actually for you to go first.  But I just think as a practical matter the plaintiff is sophisticated in this space and has a theory of what's legally operative and how I'm supposed to know the answer to that question.

So regardless of whether it's a pleading failure or not and the implications of who goes first --

MR. MARINO:  It doesn't really matter.  I agree with Your Honor.  In the somewhat unique circumstances of this case, I don't think it matters very much at all.  We'll do it that way.  That will be great.

THE COURT:  How much time do you need for a letter like that, do you think?

MR. HORNE: I've got a previously scheduled vacation starting this Friday. I can try to get it all done before then but that's a little bit tight.

THE COURT: Don't do that. That's not consistent with what we're saying about trying to resolve things on the substance. That's not the way to do it.

MR. HORNE: All right. In that case, end of the week starting November 4th we could do that.

THE COURT: So take a long vacation.

What's the date of that?

MR. MARINO: It's the 8th.

THE COURT: Why don't you all just file a letter today describing a shared sense of what the schedule is.

MR. MARINO: Sure.

THE COURT: I don't want you to stay up all night for a day and a half, and also I don't want to mess with your vacation. You guys will figure out together what's most sensible and humane on that.

MR. HORNE: Thank you, Your Honor.

MR. MARINO: We'll send in a proposed schedule.

THE COURT: So what I'm looking for is there are assertions about the legally operative status of certain documents. Maybe they are in the complaint fully enough, maybe they're not. But the question of how I know it's legally operative, your position might be: Hey, Judge, they

alleged it and so that's that, and here is a case that says as much.

Or your position, Mr. Marino, might be: Hey, they don't allege what they need to and here is a case that says as much.

And we'll kind of take that from there. But I think that's an issue that's out there for me.

MR. HORNE: Your Honor, if I may suggest, one thing that might cut down on the time is the simultaneous filing of the briefs.

THE COURT: I take Mr. Marino's point on this. I think you should go first.

MR. HORNE: Okay. We can do that.

MR. MARINO: Thank you very much, Your Honor, for consideration of the arguments and getting to the bottom of it in a practical way.

THE COURT: So we're going to get to the bottom of that and I'm likely to want to resolve this through an oral argument. I appreciate what you're saying, which was: Gee, it's great to be here but we don't need to come back again.

I get it. But I think you're going to come back.

MR. MARINO: I am happy to come back, Your Honor. If I gave you that impression, I apologize.

THE COURT: You're good. You're a hundred percent good.

So I'll get those letters when they come.  You'll tell me a schedule and we'll schedule an argument pretty soon thereafter.

I have a criminal trial that's to last a number of months, so it will be on a Friday because that's the day I'm leaving myself for things other than the trial.

MR. MARINO:  Can we get you that -- we'll be able to get him a schedule today?

THE COURT:  If you get me a schedule today, I'll set an oral argument either today or Monday.

MR. MARINO:  Perfect.

THE COURT:  It will be on a Friday.  I do want to look at that stuff.  I do want to look at that stuff as part of my thinking.

Mr. Marino, I think that the difficulty your client has here is that the best argument for defendants in these kind of cases is generally an argument about scienter, as we all understand.  I mean, your adversary has added some defendants who I don't even know why they're in the case in some ways.

But the harder question for you is -- with at least one of the defendants, maybe two, the question is if the plaintiff is right, oh, my gosh, how could anyone miss this?

Now, your fallback argument -- it's not a fallback but your argument is not the normal argument.  The normal argument is, well, Jane didn't know or Joe didn't know.

*42*

Your argument is:  "Well, well, well, this was so" -- to use language from another body of law -- "open and notorious.  How could it have been a fraud?"

MR. MARINO:  And that is an argument that we make, as you've seen.

THE COURT:  I got that argument.  I take the argument but the thing that's difficult about that argument for you is that argument is used in the scienter part of your brief and is not really a scienter argument.

MR. MARINO:  I take your point on that.

THE COURT:  That's the hardest part for you.  If there's a ubiquitous corporate practice, which is to say if the entire business model -- which is just an allegation.  But if the entire business model is potentially in the teeth of something that has the force of law, then, gee, even under *Tellabs* and the PSLRA, the core operations document as interpreted in *Avaya* is going to give you a hard time, your best answer back may be, may be, is the open and notorious aspect but that's not a scienter argument.  That runs through 12(b)(6) in a tough way.

MR. MARINO:  Let me say this to that because you referred to the Private Securities Litigation Reform Act, and I think you have to remember the cases are quite clear that the inference must be more than merely reasonable or permissible.

THE COURT: Right.

MR. MARINO: It has to be cogent and compelling and I think most importantly at least as compelling as opposing inferences.

THE COURT: I gotcha.

MR. MARINO: When I think about scienter -- I take Your Honor's point when you say it's not exactly -- it's certainly not the garden variety scienter argument you'd see, but the reason I think it bears careful consideration here is if -- again, this is all, in my view, the prism through which you are viewing this problem is all about what you know about the opinions. Right? Whether they have the force of law and how specific they are.

Because when you talk about open and notorious, does it make good sense, does it make more sense than the opposite conclusion that we would say: Look, here is what we have done to address the problem.

These are the things we have said. We have stopped teaching those classes, we are now teaching these classes, this is how it's being done.

But it's all against the backdrop of what I would suggest to Your Honor and you're going to find after you read this instrument is a very amorphous and I think intentionally -- let me use this word "guideline-sy" kind of regulation.

That's why your last question you asked about let's have a letter on whether and to what extent it has the force of law, but we know that something that has the force of law that's going to become the basis for an allegation of fraud, it better be very specific.  Right?

I think we can make a very compelling argument that what we ceased was what those opinions suggested we had to cease.  You will see when you read the opinions how aspirational it is.

In one year we're going to accomplish this and it's going to be this much better.  In two years it's going to be better.  In three years we're really going to have -- it's very much the sort of public pronouncement -- it has a lot of political value, I'm sure, but it's this sort of public pronouncement:  Here is how we're going to attack this problem.

It's not like:  Hold it, this is unlawful.

And that's where I think they run into a significant problem.  I take your point and hopefully you take mine, as well.

I think when you have it in front of you, we will have a much more informed discussion.  I know we spent a lot of time talking about the procedure and so forth, but I appreciate it because it's --

THE COURT:  All good.  I got it.  I take the point

you're making, which is:  Hey, keep your mind open until you've seen the materials.

And I will.

MR. MARINO:  Exactly.

THE COURT:  That makes sense to me.  Thank you very much.  I appreciate it.

We haven't spoken that much.  What do you want to add or what do you want to say?  Over to you.

MR. MARINO:  I'll sit, if I may, Your Honor.

THE COURT:  Of course.

MR. HORNE:  We have nothing more, Your Honor.  We're happy to submit the briefing and come back.  In terms of page limits, you know, just to be safe, can we say five pages and probably we won't use it?

THE COURT:  Two single-spaced pages.

MR. HORNE:  Two single-spaced.

THE COURT:  If you cite cases, I'm going to read them all, so cite cases.

MR. HORNE:  Okay.

THE COURT:  You all are very thoughtful and you'll get there.  Two single-spaced pages for what we have characterized as the briefing.  These are tight issues.

MR. HORNE:  Okay.  Thank you, Your Honor.

THE COURT:  If this were going to be before your vacation, you were going to be great with two pages.  So we're

going to get two pages and it will be excellent.

Anything else you wanted to add, in all seriousness?

MR. HORNE:  No.  That's it.  Thank you, Your Honor.

THE COURT:  Thank you very much.

Mr. Marino, anything else you want to add?

MR. MARINO:  I do not, Your Honor.  Thank you for your time.

THE COURT:  Thank you all very much.  I appreciate it.  I said it a couple times.  The papers are so good here.  You all should feel -- you have my admiration for how well they're done.  I appreciate the oral argument, too.  It was very helpful.

MR. MARINO:  Thank you, Your Honor.

THE COURT:  Thank you all very much.  We're adjourned.

(Which were all the proceedings held in the above-entitled matter on said date.)

*    *    *    *    *

**FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE**

I, **Lisa A. Larsen, RPR, RMR, CRR, FCRR,** Official Court Reporter of the United States District Court for the District of New Jersey, do hereby certify that the foregoing proceedings are a true and accurate transcript from the record of proceedings in the above-entitled matter.

*/S/Lisa A. Larsen, RPR, RMR, CRR, FCRR*

Official U.S. District Court Reporter ~

District of New Jersey

DATED this October 26, 2024